# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**

v.

**YAZIRI M. ESQUILIN-MARTINEZ,**

**Defendant.**

**Crim. No. 17-144 (ADC)**

## OPINION AND ORDER

Defendant Yaziri M. Esquilin-Martínez ("defendant") is charged with three counts of possession of controlled substance with intent to distribute, pursuant to 21 U.S.C. § 841; and one count of possession of firearms in furtherance of a drug trafficking crime, pursuant to 18 U.S.C. § 924(c). **ECF No. 13**. Before the Court is defendant's motion to suppress and request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). **ECF No. 27**. The government opposes the motion. **ECF No. 34**. For the reasons explained below, the Court **DENIES** defendant's motion to suppress and request for a *Franks* hearing. **ECF No. 27**.

**I.    Background**

The government obtained and executed a search warrant on defendant's home and vehicle based on Puerto Rico Police Agent Orlando Castro González's ("Agent Castro") sworn statement, describing his observations on February 28, 2017. **ECF Nos. 29-2; 34** at 2. In his statement, he attests that an unidentified older woman reported observing marijuana

transactions at 52 Luna Street in the Los Angeles subdivision of Carolina, Puerto Rico. **ECF No. 29-2** at 2. Agent Castro then investigated the property. *Id*.

In his sworn statement, Agent Castro explained that he parked an unmarked rental car within clear view of the aforementioned property on February 28, 2017, arriving around 2:45 p.m. *Id*. Within several minutes of arriving at this post, Agent Castro observed a slim, white, male in a black shirt and blue jeans approach the property and then observed a blonde, white, female wearing a black tank top, black "sport" pants, and no shoes ("Female 1") exit the upstairs residence[1] to meet the man. *Id*. He attested that he observed the male give Female 1 money. *Id*. He described observing Female 1 open the trunk of a grey Toyota Corolla with license plate number EAL-964, and remove three large, transparent, plastic bags containing several smaller, pressure-sealed, transparent, plastic bags filled with "green shavings," that Agent Castro believed to be marijuana. *Id*. 2–3. She gave several of the smaller bags containing the "green shavings" to the male, concluding the interaction. *Id*. at 3. Female 1 carried the three large bags into the first floor residence and, a few minutes later, she exited with only one large bag that she carried to the second floor. *Id.*

At approximately 3:00 p.m., a young, blonde, white, female, wearing her hair in a bun, a white blouse, blue jean shorts with holes, and white flip-flops arrived at the residence ("Female 2"). *Id*. Agent Castro attested that he observed Female 1 exit the upstairs residence to

---

[1] Agent Castro believed the home contained two separate residences because he observed "two meters" attached to the house. **ECF No. 29-2** at 2.

meet Female 2, who gave Female 1 money in exchange for a small bag plastic bag of "green shavings," that the agent believed to be marijuana. *Id*. Female 2 departed on foot, and Agent Castro decided to follow her. *Id.* Once he felt he was "in a place that would not put [his] investigation at risk, [he] stopped [his] vehicle" alongside Female 2 and identified himself as a police officer. *Id*. Female 2 dropped the bag and ran. *Id*. Agent Castro did not pursue Female 2, because he "did not know the area well," "was alone," and "did not want to alert more persons about [his] presence in the area." *Id*. He seized the bag as evidence and returned to the police station to have it tested. *Id*. at 3–4. The bag's contents tested positive as marijuana. *Id*. at 4.

The Puerto Rico Police presented Agent Castro's sworn statement to a state court magistrate judge in application for a search warrant of the property and Toyota Corolla. *Id.* Police executed the search warrant on March 3, 2017. **ECF No. 34** at 2. The search revealed two guns; ammunition and magazines; two large, plastic bags of marijuana; 288 vials of crack cocaine; 206 tablets of unknown substances; thirteen plastic bags of cocaine; drug paraphernalia; a digital scale; three radio-frequency scanners; one money-counting machine; one plastic-sealing machine; and approximately $8,684 in cash. *Id.* at 2–3. The individual Agent Castro described as "Female 1" in his statement was later identified as defendant. *Id.* at 2.

Defendant moves to suppress Agent Castro's sworn statement on the grounds that it contains misstatements and omissions that amount to a "reckless disregard for the truth." **ECF No. 27** at 4. Defendant requests a *Franks* hearing.

## II. Legal Standard

"An affidavit supporting a search warrant is presumptively valid." *United States v. Gifford*, 727 F.3d 92, 98 (1st Cir. 2013) (citing *United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012)). A defendant who challenges the veracity of a warrant affidavit is entitled to an evidentiary hearing—known as a *Franks* hearing—"if he can make a substantial showing that the affiant intentionally or with reckless disregard for the truth included a false statement in the affidavit, which statement was necessary to the finding of probable cause." *United States v. Tanguay*, 787 F.3d 44, 48 (1st Cir. 2015) (quoting *Franks*, 438 U.S. at 155–56 (1978)).

## III. Analysis

Defendant argues that because two individuals in the neighborhood on the day of surveillance signed affidavits that do not corroborate Agent Castro's sworn statement, Agent Castro's statement is untrue.[2] **ECF No. 27** at 5–7. Appended to defendant's motion are affidavits from defendant's neighbor ("the neighbor") and a handyman who was working on a nearby roof on the date of the surveillance ("the handyman"). **ECF Nos. 27-1; 27-2**.

The neighbor specifically attested that he is familiar with defendant, has lived in the neighborhood for many years, recognizes all of the neighbors' vehicles, purchases foodstuffs from defendant at her home, takes early-afternoon walks every day in the neighborhood and, as a result of his walks, he knows that defendant generally is out picking up her children around

---

[2] Defendant also notes that the individual who reported the residence to the Fajardo Police rather than the Carolina Police remains unidentified. **ECF No. 27** at 1–2, 5. Defendant offers no argument or support for her implication that these facts are problematic. The Court therefore does not address it.

2:45 and 3:30 p.m. every day. **ECF No. 27-1** at 1–2. He stated that he remembers February 28, 2017, clearly because he was distraught from a heated argument he had with his son days earlier. *Id*. He described his walks on the days after the argument as providing a meditative opportunity to contemplate his son's behavior. *Id*. He stated that he took his daily walks from February 27 to March 3, 2017, around "2:30pm to 3:30pm," during which time he "did not see any strange car (a car not belonging to the neighbors), [he] did not see anyone approach the 2nd floor where [defendant] lives, nor did [he] see someone running." *Id*. at 2.

Similarly, the handyman attested that he lives nearby and was working on a roof that partially overlooks the surveilled residence on the afternoon of February 28, 2017. **ECF No. 27-2** at 1. He worked on the roof from approximately 2:00 p.m. to 4:00 p.m. *Id*. He stated that he did not see "any strange cars parked in the street" that day and "did not see anyone approach the top apartment of [the surveilled residence], as everybody in the neighborhood knows that they sell pastries and the like at that house." *Id*. He attested that he observed defendant leave the residence "around 2:30pm approximately, soon after [he] started the front part of the roof, which has [a] view towards [the street the surveilled property is on]." *Id*. He also stated that he did not see anyone "run and a car following the person." *Id*.

While these statements do not necessarily corroborate Agent Castro's sworn statement, they also do not contradict it or even raise a cause for concern. The neighbor's, handyman's, and Agent Castro's sworn statements can all be true and not be in conflict. In fact, the only statement that appears to conflict Agent Castro's observations is the handyman's mention that he observed

defendant leave around 2:30 p.m. But, the handyman qualified that statement with the word "approximately," specified that defendant left sometime after he started working on the front of the roof, and described that part of the roof as generally having a view of defendant's street. Moreover, it is completely possible that the neighbor and handyman simply did not notice Agent Castro's vehicle, missed seeing anyone approach the residence, and were out of view when Agent Castro pursued Female 2. Agent Castro attested that he made efforts to go unnoticed and the neighbor and handyman were admittedly preoccupied that day. That the neighbor and handyman did not observe what Agent Castro described does not necessitate the conclusion defendant seeks: that Agent Castro fabricated some or all of his sworn statement. *See United States v. Moon*, 802 F.3d 135, 149–50 (1st Cir. 2015) (noting that conclusory allegations fall "well short of the 'substantial preliminary showing' necessary to justify a *Franks* hearing" (citation omitted)). Defendant has not satisfied her burden under the *Franks* standard. *See id.*; *United States v. Graf*, 784 F.3d 1, 8–9 (1st Cir. 2015).

## IV. Conclusion

The motion at **ECF No. 27** is **DENIED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 9th day of August, 2018.

                                                      **S/AIDA M. DELGADO-COLÓN**
                                                      **United States District Judge**